NOT DESIGNATED FOR PUBLICATION

No. 119,036

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTONIO COOPER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed April 5, 2019. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.

LEBEN, J.: On probation for aggravated battery, Antonio Cooper appeals the revocation of his probation and the imposition of his underlying prison sentence. He mostly complains that even though he told his case manager, "I want to kill people," the district court shouldn't have considered that statement to have violated a probation condition prohibiting "assaultive behavior, violence or threats of violence."

But Cooper had received a dispositional-departure sentence from prison (his presumptive sentence under state sentencing guidelines) to probation. In that circumstance, the district court had the discretion to terminate his probation and impose

the prison sentence based on *any* material violation of his probation. See K.S.A. 2018 Supp. 22-3716(c)(9)(B); *State v. Cherry*, No. 119,568, 2019 WL 985395, at *2 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* March 22, 2019. Cooper admitted that he had violated probation by testing positive for marijuana in a drug test and by operating a motor vehicle without a license and insurance. Given the other evidence presented to the court—including Cooper's statement that he wanted "to kill people"—the district court did not abuse its discretion by revoking Cooper's probation even if the specific statement about killing people didn't constitute a probation violation.

Cooper's underlying conviction was for a severity-level-4 aggravated battery, a serious felony offense. Based on our state's sentencing guidelines, the presumptive sentence was prison, but the parties agreed to recommend a dispositional departure to probation. The court granted it, sentencing Cooper to serve 36 months on probation with an underlying 45-month prison sentence to be served if he didn't successfully complete his probation. The court ordered Cooper to refrain from recreational drug use and from driving without a valid license or insurance.

About a week after sentencing, police arrested Cooper for domestic violence. He pleaded guilty to a reduced charge of misdemeanor battery.

Before sentencing on that battery (and a hearing on whether to revoke his probation in our case), the State charged him with a separate assault. That criminal charge was later dismissed, but the assault allegation remained for consideration on the State's probation-violation claim.

The district court held a hearing to sentence Cooper on the misdemeanor battery charge and to consider whether to revoke his probation based on the battery conviction and the acts that had led to the assault charge. The court chose to leave Cooper on probation in our case.

Later, the State brought new allegations of probation violations. The State said that Cooper had operated a motor vehicle without a license or insurance and had tested positive for marijuana. In a supplemental report, Cooper's intensive-supervision officer reported that Cooper wasn't taking his medications, had expressed homicidal thoughts, and had snorted crushed pills.

Cooper admitted the probation violations—driving without license or insurance and testing positive for marijuana. But he did not admit the additional statements made by the officer. The State amended its probation-violation charges to add those allegations as probation violations, and Cooper's mental-health case manager, Casey Gonzalez, testified about them in an evidentiary hearing.

She said that Cooper had twice "endorsed [a] homicidal ideation to [her] by stating, 'I want to kill people.'" She also said that Cooper reported not having taken his prescribed medication and that she had personally witnessed him take prescription pills from his pocket, crush them, and then snort them.

The district court found that Cooper had violated his probation. That was an easy call—Cooper had admitted to several violations, and the court had accepted Gonzalez' testimony that Cooper had "pulled something out of his pocket and snorted it up his nose" in front of her. The court correctly noted that the "big concern [was] what to do with the disposition."

The court noted "legitimate public safety concerns," despite a defense argument that Cooper hadn't shown that he would act on his expressed desire to kill people. As the court put it, "Well, I don't know that we need to wait to find out until he does." The court also noted several aspects of Cooper's mental-health problems discussed in this and earlier hearings.

3

After getting input from both sides, the court revoked the probation and ordered that Cooper serve his prison sentence. The court noted that Cooper had committed a domestic battery only five days after he was put on probation, that he wasn't taking his medications for mental-health issues, and that Cooper was expressing a desire to kill people: "[T]he Court is genuinely concerned about the public safety."

On appeal, Cooper mainly complains that saying to a mental-health worker or a probation supervisor that you sometimes want to kill people isn't the same as making a specific threat to kill or harm someone. Thus, Cooper argues, those statements shouldn't have been considered a violation of the probation requirement that he refrain from "assaultive behavior, violence or threats of violence."

Cooper may be right on that point, but it does not affect the bigger picture. The district court faced two questions. First, did Cooper violate his probation? Second, should Cooper's probation be revoked and his prison sentence imposed?

On the first question, Cooper admitted that he violated the probation in two important respects, and the court found some other violations (like snorting prescription drugs in front of the officer and not taking his medications) supported by the evidence that aren't challenged on appeal.

On the second question, because of the dispositional-departure sentence, the district court had the discretion to revoke the probation and send Cooper to prison for any material probation violation. We reverse a discretionary decision like that only if it's based on an error of law or fact or if no reasonable person would agree with it. *State v. Brown*, 51 Kan. App. 2d 876, Syl. ¶ 4, 357 P.3d 296 (2015).

4

Cooper essentially argues that the decision was based on an error of law and fact because the court relied on the statement about wanting to kill people when that didn't directly violate Cooper's probation. But we generally uphold a probation revocation even when one ground the district court relied on may be invalid as long as another basis for the revocation was proper. See *State v. Grossman*, 45 Kan. App. 2d 420, 428, 248 P.3d 776 (2011); *State v. Hagan*, No. 106,338, 2012 WL 5392105, at *5 (Kan. App. 2012) (unpublished opinion); see also *State v. Brown*, 305 Kan. 674, 693, 387 P.3d 835 (2017) (following the same rule for departure sentences).

And here, even if Cooper is right that saying "I want to kill people" didn't directly violate the probation terms, the district court could properly consider that statement in deciding what to do. As the district court recognized, the key question before it was not whether Cooper had violated the probation—he had. Convicted for aggravated battery, he had committed another battery while on this probation. And now, with serious mental-health problems and a history of not taking prescribed medications designed to address those problems, he was saying he wanted to kill people. Whether or not those statements violated the probation, they were relevant in considering how the court should exercise its discretion.

We find no abuse of discretion and affirm the district court's judgment.